UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

EMPLOYERS INSURANCE COMPANY　　　　　　　　　CIVIL ACTION
OF WAUSAU


VERSUS　　　　　　　　　　　　　　　　　　　　NO: 12-2961


JENNIE V'S SEAFOOD, LLC AND　　　　　　　　SECTION: R
ATAIN SPECIALTY INSURANCE
COMPANY

### ORDER AND REASONS

Before the Court is the Motion for Summary Judgment of defendant Jennie V's Seafood, LLC ("Jennie V's").[1] For the following reasons, the Court DENIES defendant's motion.

### I.   BACKGROUND

Bon Secour Fisheries, Inc., a seafood processor and wholesale distributor located in Alabama,[2] holds a commercial general liability insurance policy with plaintiff Employers Insurance Company of Wausau.[3] On September 20, 2007, Bon Secour entered into a contract with Jennie V's, a seafood harvester located in Louisiana, under which Jennie V's agreed to maintain certain insurance coverage for Bon Secour and to defend and

---

[1]　R. Doc. 15.

[2]　R. Doc. 1 at 2.

[3]　*Id.* at 5.

indemnify Bon Secour against certain claims.[4] The agreement is a standard document drafted by Bon Secour for use in its business dealings that was executed by the parties in Louisiana.[5] It provides in relevant part:

> 2. Seller [Jennie V's] agrees to defend, indemnify, and hold harmless Buyer [Bon Secour] . . . (individually, an "indemnitee") from all actions, suits, claims, demands, and proceedings ("Claims") and any judgments, damages, losses, debts, liabilities, penalties, fines, costs and expenses (including reasonable attorneys' fees) resulting therefrom whether arising out of contract, tort, strict liability, misrepresentation, violation of applicable law and/or any cause whatsoever:
>
> . . . .
>
> (III) brought . . . against any Indemnitee for the recovery of damages for the injury, illness and/or death of any person, or loss or damage arising out of or alleged to have arisen our [sic] of (a) the delivery, sale, resale, labeling, use of [sic] consumption of any product, or (b) the negligent acts or omissions of Seller; provided, however, that Seller's indemnification obligations hereunder shall not apply to the extent that Claims are caused by the negligence of the Buyer.
>
> Seller's agreement to maintain and provide insurance on behalf of Buyer under Paragraph 3 is a result of the requirement for indemnity and defense outlined in this paragraph. . . .
>
> 3. Seller agrees to maintain in effect insurance coverage with reputable insurance companies covering . . . . commercial general liability, including product liability and excess liability, all with such limits as are sufficient in Buyer's reasonable judgment, to protect Seller and Buyer from the liabilities insured against by such coverages. . . . Buyer shall be named as an

---

[4] *Id.* at 2-3.

[5] *Id.* at 2.

2

additional insured . . . with respect to the commercial general liability policy including products liability.[6]

According to Employers, Jennie V's holds a commercial general liability insurance policy with Atain Specialty Insurance Company.[7] Employers alleges that this policy (the "Atain policy") contains provisions extending coverage to entities with which Jennie V's contractually agreed to provide commercial general liability insurance.[8] Under the contract described above, this group would include Bon Secour.

On September 29, 2009, Annie and Walter Lindsey filed suit against Bon Secour and Jennie V's, among others, in Tennessee state court.[9] In this lawsuit, captioned *Annie Delois Lindsey & Walter Lindsey v. The Lucky Bamboo, Inc. et al.* (the "*Lindsey* lawsuit"), the plaintiffs alleged that Annie Lindsey became seriously ill after consuming allegedly tainted raw oysters supplied by Bon Secour and obtained from either Jennie V's or another seafood harvester named as a defendant, Prestige Oysters, Inc.[10] The Lindseys brought claims against the defendants for breach of express and implied warranties, product liability,

---

[6]   R. Doc. 1-1 at 1-2.

[7]   R. Doc. 1 at 4.

[8]   *Id.*

[9]   *Id.* at 5.

[10]  R. Doc. 1-2 at 6.

violations the Tennessee Consumer Protection Act, negligence, and negligent or fraudulent misrepresentation.[11]

After the Lindseys filed this lawsuit, Employers and Bon Secour requested that Jennie V's defend and indemnify Bon Secour under the contract between the two entities.[12] Jennie V's declined to do so, contending that the *Lindsey* lawsuit arose out of Bon Secour's negligence and was therefore not covered by the contract.

Employers also asked that Jenny V's or Atain defend and indemnify Bon Secour pursuant to the Atain policy, which plaintiff alleges should have covered Bon Secour in accordance with the contract.[13] Atain responded that there was no additional insured provision in the Atain policy.[14] Employers requested a copy of the policy, but Atain failed to provide one.[15]

On August 3, 2012, the Lindseys settled their claims against Bon Secour and released Bon Secour in exchange for a payment of $325,000.[16] Employers paid the costs of defense for Bon Secour in

---

[11]   *Id.* at 8-13.

[12]   R. Doc. 1 at 6.

[13]   *Id.*

[14]   *Id.*

[15]   *Id.*

[16]   *Id.* at 7; R. Doc. 28-1.

the *Lindsey* lawsuit and funded this settlement.[17] At oral argument, counsel for Jennie V's admitted that Jennie V's settled the Lindseys' lawsuit against it at approximately the same time as the Lindseys settled with Bon Secour.

On December 13, 2012, Employers sued Jennie V's and Atain for declaratory relief and for costs incurred as a result of the *Lindsey* lawsuit.[18] Plaintiff seeks (1) a declaration that Atain owes a duty to defend and indemnify Bon Secour in the *Lindsey* lawsuit because Bon Secour is an additional insured under the Atain policy; (2) a declaration that Jennie V's owes a duty to defend and indemnify Bon Secour pursuant to the indemnity provisions of the agreement; and (3) reimbursement of defense costs and settlement payments from the *Lindsey* lawsuit from Atain and/or Jennie V's.[19] Jennie V's has filed a motion seeking summary judgment on plaintiff's claims for indemnification and reimbursement against Jennie V's.[20]

## II. STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the

---

[17] R. Doc. 1 at 7.

[18] R. Doc. 1.

[19] *Id.* at 10.

[20] R. Doc. 15.

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 332)).

**III. DISCUSSION**

   **A. The Parties' Arguments**

The dispute in this case centers around the indemnity clause of the agreement, which provides in relevant part that Jennie V's

> agrees to defend, indemnify, and hold harmless [Bon Secour] . . . from all . . . claims . . . and any judgments, damages, losses, debts, liabilities, penalties, fines, costs and expenses (including reasonable attorneys' fees) resulting therefrom . . .
>
>    . . . .

>           (III) brought . . . against [Bon Secour] for the
> recovery of damages for the injury, illness and/or death
> of any person, or loss or damage arising out of or
> alleged to have arisen ou[t] of (a) the delivery, sale,
> resale, labeling, use o[r] consumption of any product, or
> (b) the negligent acts or omissions of [Jennie V's];
> *provided, however, that [Jennie V]'s indemnification
> obligations hereunder shall not apply to the extent that
> Claims are caused by the negligence of [Bon Secour].*[21]

Jennie V's contends that this agreement does not require it to defend and indemnify Bon Secour in connection with the *Lindsey* lawsuit, for two related reasons. First, Jennie V's argues that the Lindseys' injuries occurred as a result of the negligence of Bon Secour. Second, Jennie V's claims that its duty to defend and indemnify would have been triggered only after a judicial determination that Bon Secour was faultless -- a determination that never occurred, because Bon Secour voluntarily settled the *Lindsey* lawsuit.

Employers' responds that whether Bon Secour was negligent is a disputed issue of material fact that precludes entry of summary judgment. It contends that, even though Bon Secour settled the underlying lawsuit, it may still pursue a post-settlement determination of fault in order to enforce the terms of the indemnity agreement. Employers also argues that the contract is ambiguous and thus factual development is required to determine

---

[21]   R. Doc. 1-1 at 1 (emphasis added).

the intent of the parties concerning Jennie V's indemnity obligation.

**B. Application of the Governing Law**

In a diversity action, the Court applies state substantive law and the choice-of-law principles of the forum state. *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1421 (5th Cir. 1993). Under the Louisiana Civil Code, a contractual dispute in which the agreement at issue was negotiated and formed in Louisiana is generally governed by Louisiana Law. *See Ross v. Digioia*, No. 11-1827, 2012 WL 5877843, at *2-3 (E.D. La. Nov. 20, 2012) (citing La. Civ. Code art. 3537). Here, plaintiff asserts that the agreement was executed by Jennie V's in Louisiana.[22] Jennie V's does not dispute this and, indeed, agrees that Louisiana law applies to this dispute. Accordingly, the Court will apply Louisiana law.

Under Louisiana law, courts apply general rules of contract interpretation to construe indemnity provisions. *Liberty Mut. Ins. Co. v. Pine Bluff Sand & Gravel Co.*, 89 F.3d 243, 246 (5th Cir. 1996). "Interpretation of a contract is the determination of the intent of the parties." La. Civ. Code art. 2045. When the terms of a contract are clear and unambiguous and do not lead to absurd results, the Court interprets them as a matter of law.

---

[22] R. Doc. 1 at 2.

*Pine Bluff*, 89 F.3d at 246; *see also* La Civ. Code art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."). But "ambiguity in the terms of a contract gives rise to a fact question concerning the intent of the parties." *Pine Bluff*, 89 F.3d at 246. In construing the indemnity contract at issue, the Court is mindful of two canons of construction that are relevant to this case. First, ambiguous indemnity contracts may not be construed to indemnify a party against losses resulting from its own negligence, because such an intention must be expressed in unequivocal terms. *Reggio v. E.T.I.*, 15 So.3d 951, 953 (La. 2008). Second, ambiguous provisions in a contract "must be interpreted against the party who prepared the agreement." *S. States Masonry, Inc. v. J.A. Jones Constr. Co.*, 507 So.2d 198, 201 (La. 1987) (citing La. Civ. Code art. 2056).

In *Pine Bluff*, the Fifth Circuit applied the foregoing principles to a contractual indemnity provision substantially similar to the one at issue here. It provided that the defendant subcontractor, Pine Bluff, would indemnify the contractor, Newberg, from any claims "resulting from the performance of the work, provided that any such claim . . . is caused in whole or in part by any negligent act or omission of [Pine Bluff] . . . except to the extent it is caused in part by [Newberg]." *Id.*

(second, third, and fourth alterations in original). The court held that this provision was ambiguous, because it could be fairly read either (1) to free Pine Bluff from any obligation to indemnify if the underlying claim were caused in any part by Newberg, or (2) to require Pine Bluff to indemnify Newberg only to the extent that Pine Bluff was at fault for the underlying claim under comparative negligence principles. *Id.* at 246-47. Accordingly, the Fifth Circuit held that the district court erred in interpreting the provision as a matter of law. *Id.* at 247.

The indemnity provision at issue in this case is similarly ambiguous. Just as in *Pine Bluff*, the agreement could fairly be read either to (1) free Jennie V's from its indemnity obligation if Bon Secour were at fault at all in the underlying incident, or (2) require Jennie V's to indemnify Bon Secour only for those costs and damages caused by the negligence of Jennie V's. Bon Secour drafted the agreement, which suggests that interpretation (1) (the interpretation more favorable to Jennie V's) is preferable. *See S. States Masonry*, 507 So.2d at 201. But the Court need not resolve this issue definitively, because even under interpretation (1), Jennie V's would still have a duty to defend and indemnify Bon Secour if the latter were not at fault at all in the underlying incident. And, because Bon Secour settled the *Lindsey* lawsuit without admitting liability, there has been no determination of fault on the part of Bon Secour.

Thus, whether Bon Secour was negligent cannot be determined on this summary judgment record.

Jennie V's suggests, however, that Employers is not entitled to litigate this factual question. Jennie V's argues that Employers may not seek a post-settlement determination of fault because Bon Secour waived its right to seek defense and indemnity from Jennie V's by entering into a settlement agreement with the plaintiffs in *Lindsey*. Resolution of this issue requires the Court to analyze two Fifth Circuit cases that addressed a similar issue, *Pine Bluff* and *Westchester Fire Insurance Co. v. Haspel-Kansas Investment Partnership*, 342 F.3d 416 (5th Cir. 2003). In both *Pine Bluff* and *Westchester*, as in this case, the plaintiffs sought contractual indemnity for amounts they paid to settle a lawsuit against them.

In *Pine Bluff*, Pine Bluff, the contractual indemnitor, had contributed part of the settlement; Newberg, the contractual indemnitee, had contributed part; and Pine Bluff's customer had contributed part. 89 F.3d at 245. The Fifth Circuit rejected Pine Bluff's argument that Newberg waived its right to seek indemnification by contributing to the settlement of the underlying lawsuit. It noted that "Newberg was simply one of several players participating in a single, global settlement" and that Newberg had "contributed a lump sum equal to the amount contributed by Pine Bluff." *Id.* at 248. The court concluded:

12

> Louisiana law does not bar Newberg from pursuing a post-settlement determination of fault through an action against Pine Bluff to enforce the terms of their indemnification agreement. Indeed, such a bar would conflict with firmly established public policy encouraging settlements.

*Id.* (citations omitted).

The Fifth Circuit reached a different result in *Westchester.* There, the plaintiff, Westchester, was an insurer that had issued an excess insurance policy to K&B Drug Stores. K&B leased a store in a strip shopping center from the defendant, Haspel-Kansas, the owner of the shopping center. *Westchester*, 342 F.3d at 417-18. An individual who suffered a gunshot wound in the parking lot of the shopping center sued K&B and Haspel-Kansas for negligence. *Id.* at 418. After voluntarily dismissing his claims against Haspel-Kansas in state court, the gunshot victim settled his claims against K&B. *Id.* Westchester then filed a federal suit against Haspel-Kansas for indemnity based on the lease between K&B and Haspel-Kansas, which provided that Haspel-Kansas would "hold [K&B] harmless of and from any responsibility for injury to person or damage to property resulting from any occurrence in, on, or about the Shopping Center outside of the leased premises, including . . . parking areas, not due to the negligence of [K&B]." *Id.* at 421. The federal trial court found that Haspel-Kansas's conduct was not the cause-in-fact of the gunshot victim's injuries and therefore ruled that Westchester could not receive contribution from Haspel-Kansas. *Id.* at 418-19. The court

13

also held that Westchester could not benefit from the indemnity provision in K&B's lease because K&B had voluntarily settled the underlying negligence suit. *Id.* at 418.

The Fifth Circuit affirmed both of the lower court's rulings. Of most relevance here, the court held that K&B could not pursue an indemnity claim against Haspel-Kansas because K&B had "unilaterally decide[d] to settle" the underlying negligence suit, "thereby creating K&B's 'responsibility' under the indemnity provision," even though K&B did not admit liability as part of the settlement. *Id.* at 422. The court concluded that "neither K&B nor Westchester should benefit from the indemnity provision where . . . only its unilateral decision to avoid risk forms the basis for the so-called 'responsibility' which triggers the obligation to indemnify under the lease." *Id.* The court noted that a contrary result would be "perverse," because it would give indemnitees "the incentive to settle even frivolous claims in order to avoid the costs and risks associated with litigation, and then demand indemnity for the pay-out." *Id. Pine Bluff* was distinguished on the grounds that "unlike Newberg, Haspel-Kansas did not participate in the settlement of the underlying suit." *Id.*

The Court finds that this case is closer to *Pine Bluff* than to *Westchester.* As in *Pine Bluff*, both the indemnitee and indemnitor contributed money to settle the underlying lawsuit. In

contrast, in *Westchester*, the indemnitee made a unilateral decision to settle the underlying lawsuit after the state court plaintiff had voluntarily dismissed the alleged indemnitor from the lawsuit, and the federal district court found that the alleged indemnitor had not caused the state court plaintiff's injury. Indeed, as noted above, *Westchester* distinguished *Pine Bluff* on precisely the basis that "unlike Newberg, Haspel-Kansas did not participate in the settlement of the underlying suit." *Westchester*, 342 F.3d at 422.

Since there has been no judicial finding as to the negligence, or lack thereof, of Jennie V's *or* Bon Secour in the *Lindsey* lawsuit, Employers' is "not bar[red] . . . from pursuing a post-settlement determination of fault through an action against [Jennie V's] to enforce the terms of their indemnification agreement." *Pine Bluff*, 89 F.3d at 248. "[S]uch a bar would conflict with firmly established public policy encouraging settlements." *Id.*

Indeed, Bon Secour explicitly denied fault in the underlying lawsuit in the settlement agreement it executed with the Lindseys.[23] Employers' is now entitled to attempt to prove that Bon Secour was not at fault in that suit and that the terms of the indemnity agreement should apply. *Id.* Jennie V's has not demonstrated that it is entitled to summary judgment.

---

[23]   R. Doc. 28-1 at 1.

**IV. CONCLUSION**

For the foregoing reasons, Jennie V's motion for summary judgment is DENIED.

New Orleans, Louisiana, this <u>3rd</u> day of September, 2013.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE